FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE 05 SEP 23 PM 3: 34
WESTERN DIVISION

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

AMERICOACH TOURS, INC.,
individually and as subrogee of
DISCOVER RE,

     Plaintiff,

v.

                            No. 04-2016 B/V (Consolidated)
                               05-2067 B

DETROIT DIESEL CORPORATION,
MOTOR COACH INDUSTRIES, INC., and
ESPAR, INC.,

     Defendants.

---

## ORDER GRANTING DEFENDANT MOTOR COACH INDUSTRIES, INC.'S MOTION TO DISMISS

---

       This diversity case arises from the combustion of a tour bus owned by Plaintiff, Americoach

Tours, Inc. ("Americoach"). Before the Court is the motion of Defendant Motor Coach Industries,

Inc. ("MCI") to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state

a claim upon which relief can be granted filed on February 22, 2005. Americoach filed a response

on May 4, 2005. For the reasons discussed below, the Court GRANTS MCI's motion to dismiss.

### BACKGROUND

       On January 25, 2002, a tour bus owned and operated by Americoach caught fire and was

completely destroyed.[1] (Consol. Amend. Compl. ("Amend. Compl.") ¶ 17.) No injuries or loss of

life were sustained as a result of the fire. (Id.) The fire originated in the engine compartment in the

---

[1] The bus could not be repaired without incurring more expense than the value of the bus. (Id. ¶
20.)

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on  9 - 23 - 05

74

left corner of the bus and was caused by a malfunction in the component parts of the heater or by the turbo charger. (Id.¶¶ 23-25.) The heater was manufactured by Defendant Espar, Inc. and designed and installed by MCI. (Id.¶ 22.) The turbo charger was part of the engine, which was built by Defendant Detroit Diesel Corporation ("DDC") and installed by MCI. ( Id.¶ 23.) MCI is in the business of selling tour buses that it has assembled and outfitted from component parts. (Id.¶¶ 12, 27.)

Americoach alleges that "[t]he fire was caused, either jointly or severally, by a malfunction in the electrical or component parts of the heater designed and tested by MCI and manufactured by Espar and/or the fire was caused by MCI's negligence in outfitting the tour bus as part of its regularly conducted business activity." (Id.¶ 24.) Alternatively, Americoach contends that "[t]he fire was caused, either jointly or severally, by a malfunction in the turbo charger of DDC's engine and/or the fire was caused by MCI's negligence in outfitting the tour bus as part of its regularly conducted business activity." (Id.¶ 25.) Based on these allegations, Americoach brings claims against MCI for negligence, products liability, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. (Id. ¶¶ 26-80.) Americoach seeks to recover the value of the bus, $386,180 and lost profits in the amount of $163, 238. (Id. ¶ 10.)

## CHOICE OF LAW

Americoach's products liability claim is brought under Tenn. Code Ann. § 29-28-101, et seq., and its claim for breach of implied warranty of merchantability against MCI is brought under Tenn. Code Ann. § 47-2-314. (Amend. Compl. ¶¶ 50, 66.) Americoach assumes, in its response to MCI's motion to dismiss, that Tennessee law applies to all of its claims. MCI states that it also assumes for purposes of its motion to dismiss that Tennessee law applies. (Def.'s Mot. Dismiss ("Def.'s

Mot.") at 2.) Because the parties agree to the particular state law application, the court will apply

Tennessee law and will not conduct a choice of law analysis sua sponte. See Sneyd v. International

Paper Co., Inc., 142 F. Supp. 2d 819, 823 (E.D. Mich. 2001) (citing GBJ Corp. v. Eastern Ohio

Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998)); see also Dextrex Chemical Industries, Inc., v.

Employers Ins. of Wausau, 746 F. Supp. 1310, 1311 (N.D. Ohio 1990) (applying Michigan

substantive law because the parties came to an agreement that Michigan law applied, even though

the court had determined, in an earlier sua sponte choice of law analysis, that Wisconsin law should

apply).

## STANDARD OF REVIEW

"Under the liberal notice pleading rules, a complaint need only put a party on notice of the

claim being asserted against it to satisfy the federal rule requirement of stating a claim upon which

relief can be granted." Memphis, Tenn. Area Local, Am. Postal Workers' Union, AFL-CIO v. City

of Memphis, 361 F.3d 898, 902 (6th Cir. 2004).  When considering a motion to dismiss for failure

to state a claim under Fed. R. Civ. P. 12(b)(6), the court must "construe the complaint in the light

most favorable to the plaintiff, accept all of the complaint's factual allegations as true and determine

whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle

relief."  Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998).  "The Federal Rules of Civil

Procedure do not require a claimant to set out in detail all the facts upon which [it] bases [its] claim,"

Conley v. Gibson, 355 U.S. 41, 47 (1957).  However, "[t]o avoid dismissal under Rule 12(b)(6), a

complaint must contain either direct or inferential allegations with respect to all material elements

of the claim." Wittstock v. Mark a Van Sile, Inc., 330 F.3d 889, 902 (6th Cir. 2003).

## ANALYSIS

I.  Negligence and Products Liability Claims

MCI argues that Americoach's negligence and products liability claims must be dismissed because the damages sought by Plaintiff are purely economic. (Def.'s Mem. Supp. at 1.)  The economic loss doctrine, adopted by the Tennessee courts, prohibits purchasers of products from recovering purely economic damages under negligence or products liability theories.  Ritter v. Custom Chemicides, Inc., 912 S.W.2d 128, 133 (Tenn. 1995); see also  HDM Flugservice GmbH v. Parker Hannifin Corp., 332 F.3d 1025 (6th Cir. 2003).  A defective product causes a purely economic loss when the product causes no personal injuries and damages no property other than the "product itself."  East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 870, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986).  The rationale for the economic loss doctrine is that, in the absence of personal injuries or property damage, a defective product has simply "not performed as expected" and "the buyer's remedy should be governed by the rules of contract, which traditionally protect expectation interests."  Ritter, 912 S.W.2d at 133 (quoting Sanco, Inc. v. Ford Motor Co., 579 F. Supp. 893, 897 (D. Ind. 1984)).

Americoach seeks to recover for "property damage" for the bus destroyed by the fire and, in addition, for lost profits. (Amend. Compl. ¶ 10.)  Profits lost as a consequence of defective goods are considered an economic loss. Messer Griesheim Industries, Inc. v. Cyrotech of Kingsport, Inc., 131 S.W.3d 457, 465 (Tenn. Ct. App. 2003) (quoting White & Summers, Uniform Commercial Code, § 11-4 (2nd Ed. 1980)).  The issue before the Court, therefore, is whether the loss of the bus is properly characterized as an economic loss, or conversely, as damage to "other property" for which recovery in tort is permissible. East River S.S. Corp., 476 U.S. at 867-70. Americoach argues that a component part of the bus, the heater, was the defective "product itself" and, therefore, the

4

destruction of all other parts of the bus constitutes damage to "other property." (Pl.'s Resp. at 4.)
In particular, Plaintiff maintains that "a malfunction in the electrical or mechanical components of
the heater" caused the fire and that "when MCI assisted in the design of the heater it installed in the
tour bus, that heater was released in the chain of commerce and became the product itself." (Amend.
Compl. ¶ 25 and Pl.'s Resp. at 4.)  Based on this argument, Plaintiff asserts that the loss of the bus
is recoverable non-economic damage as it was caused by the heater, the product itself, to Plaintiff's
other property.

The Tennessee courts  have rejected Plaintiff's argument.  In Tennessee Farmers Mut. Ins.
Co. v. Ford Motor Co., the plaintiff insurance company, as subrogee of a car owner, sued Ford Motor
Company because a defect in the steering column of the owner's car caused the car to combust
spontaneously. Tennessee Farmers Mut. Ins. Co. v. Ford Motor Co., No. W2001-00046-COA-R3-
CV, 2002 WL 1332492, at *1 (Tenn. Ct. App. 2002).  The insurance company argued that the
destruction of the car was property damage, not purely economic loss, because the "fires were caused
by a malfunction of only one component part." Id. at *5.  The court disagreed and held that the
entire vehicle, "destroyed by the spontaneous combustion of a component part, constituted the
'product itself' for the purpose of determining whether the insured suffered only economic loss."
Id. at *6. In reaching its conclusion, the Tennessee court adopted the reasoning of the United States
Supreme Court in East River S.S. Corp., applying the economic loss doctrine to an admiralty action,
that "integrated packages," rather than separate component parts, are the "product itself." East River
S.S. Corp., 476 U.S. at 867 (holding that an entire turbine engine, rather than the solely the defective
turbine, is the 'product itself'). In the instant case, MCI, like Ford in Tennessee Farmers, assembled
the bus from component parts, and the entire bus, like the car in Tennessee Farmers, was therefore

the "product itself." [2]

Rather than characterizing the heater as a defective component part of the bus, Americoach asserts that a "malfunction in the electrical or component parts of the heater" is to blame for the damage to the bus. (Amend. Compl. ¶ 24.) Building on this logic, Americoach further reasons that MCI's role in designing the heater equates with the release by MCI of the heater into the stream of commerce as the product itself, not as a component part of the tour bus. (Pl.'s Resp. at 4.) The Court first rejects the assertion that the definition of an integrated package depends on a matter of degree. In East River, a shipbuilder contracted with a turbine manufacturer to design, manufacture and supervise the installation of turbines on four oil-transporting supertankers constructed by the shipbuilder. After completion, the shipbuilder chartered each of the four ships to the petitioners in the case. When the ships were put into service, component parts of the turbines on all four tankers malfunctioned causing damage to the turbine engines. Petitioners argued that recovery in tort for

---

[2] The Court notes only one case applying Tennessee law which has reached a different conclusion regarding the characterization of property damage for purposes of the economic loss doctrine. See Corporate Air Fleet of Tennessee, Inc. v. Gates Learjet, Inc., 589 F.Supp. 1076 (M.D. Tenn. 1984). In Corporate Air Fleet, the U.S. District Court for the Middle District of Tennessee, applying Tennessee law in a diversity action, considered whether a plaintiff Learjet owner could maintain an action in strict liability against the manufacturer for repairs to the jet after the jet crashed upon landing. After noting that this issue was one of first impression in Tennessee, the court concluded that "[a]n action is one in tort, not contract, when it is established that there was an accident, caused by a defective product, that is unreasonably dangerous to the user or to his property. In this regard, the damage to the product itself satisfies the "physical harm" to the ultimate user or consumer's property." Id. at 1084. Based on this reasoning, the court permitted plaintiff to recover for damages for repairs to the aircraft in strict liability despite recognizing that the only damage suffered by the plaintiff was to the defective product itself. Id. Subsequent decisions by Tennessee courts have not adopted the court's interpretation of Tennessee law. See Tennessee Farmers, 2002 WL 1332492, at *1 (rejecting recovery in tort where vehicle spontaneously ignited but caused no personal injury or damage to property other than damage to the vehicle itself).; see also Messer Grieshem Industries, Inc., 131 S.W.3d at 466 (adopting the Supreme Court's holding in Saratoga Fishing and allowing recovery in tort for damages caused by contaminated feedgas to "other property" ruined as a result of contact with the defective product after it was placed into the stream of commerce as the "product itself").

damage to the turbine engine was permissible because the component parts of the turbine which

malfunctioned constituted distinct products apart from the damaged engines. The Court rejected this

argument, reasoning that "[s]ince all but the very simplest of machines have component parts, [a

contrary] holding would require a finding of 'property damage' in virtually every case where a

product damages itself. Such a holding would eliminate the distinction between warranty and strict

liability." East River S.S. Corp., 476 U.S. at 867 (quoting Northern Power & Engineering Corp. v.

Caterpillar Tractor Co., 623 P.2d 324, 330 (Alaska 1981)).  Under East River, as followed by

Tennessee courts, the lynchpin for defining the "product itself" is not whether the defective item is

a component of the product, or, as Americoach argues, a component of a component of the product,

but whether the item is part of an integrated package. In the instant case, all electrical or mechanical

components of the heater were "supplied . . . as part of an integrated package . . . properly regarded

as a single unit." East River, 476 U.S. at 867. As such, any damage those parts caused to the tour

bus is properly considered economic loss.

        The Court also disagrees with Americoach's contention that MCI's role in designing the

heater equates with the release by MCI of the heater into the stream commerce as the product itself.

(Pl.'s Resp. at 4.) The Supreme Court has held that "[w]hen a manufacturer places an item in the

stream of commerce by selling it to an Initial User, *that item* is the 'product itself.'"  Saratoga

Fishing Co. v. J.M. Martinac & Co., 520 U.S. 875, 879, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997)

(holding that an entire ship, rather than its defective hydraulic system, is the product itself) (emphasis

added).  While it did have a role in the creation of the heater, MCI sold the heater to an initial user

as a component part of the tour bus.  As such, the tour bus, an integrated package of component

parts, rather than the heater, is the product itself.

The Plaintiff next argues that, even if it cannot recoup the loss of the entire bus under negligence or products liability theories, it can recover under those theories for equipment that Americoach "added and replaced" after acquiring the bus. (Pl.'s Resp. at 2.) In support of its position, Americoach relies on <u>Saratoga Fishing Co. v. J.M. Martinac & Co.</u>, 520 U.S. 875, 879, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997). In <u>Saratoga Fishing</u> the United States Supreme Court held that "equipment added to a product after the manufacturer (or distributor selling in the initial distribution chain) has sold the product to an initial user is not part of the product that itself caused physical harm; rather, . . . it is 'other property.'" <u>Id.</u> at 884-85. The economic loss doctrine does not preclude recovery in tort for physical damage that a defective product causes to "other property." <u>Id.</u> at 884-85. Thus, in <u>Saratoga Fishing</u>, while the owner of a fishing vessel destroyed as a result of a defective hydraulic system could not maintain an action in tort for the loss of the vessel, the owner could recover in tort for the loss of the skiff, seine net and various spare parts added to the vessel by a user after an initial sale by the manufacturer. <u>Id.</u>; <u>see also</u> <u>Nicor Supply Ships Assoc. v. General Motors Corp.</u>, 876 F.2d 501 (5th Cir. 1989) (holding that a ship charterer, who adds expensive seismic equipment to the ship, may recover for loss of that added equipment in fire caused by a defective engine). The Court reasoned that while parties can contract for appropriate sharing of risk through warranty contracts when a product is introduced into commerce, it is not ordinary business practice for resellers of products to offer warranties. <u>Id.</u> While Plaintiff supports its claims for parts added and replaced in the same argument, we must address them separately.

According to Americoach, all additions it has made to the bus since acquiring it are "other property" and not the "product itself." (Pl.'s Resp. at 4.) While <u>Saratoga Fishing</u> may be in accord with Americoach's assertion, Plaintiff's Complaint seeks damages only for the destroyed bus and

for lost profits and fails to specifically allege any losses resulting from equipment added to the bus after the initial sale by MCI.[3]  (Amend. Compl.¶ 10.)  Consequently, the Court finds that the Complaint fails to state a claim for recovery of any property "added" to the bus by Americoach, or another user, after the initial sale by MCI.

Americoach also submits that any replacement parts it has installed since acquiring the bus should be considered "other property."  (Pl.'s Resp. at 4.)  As a preliminary matter, Americoach's Complaint fails to allege that any parts were replaced.[4]  Further, Americoach's cited authority, Saratoga Fishing, does not explicitly address the characterization of replacement parts for purposes of the economic loss doctrine.  See Saratoga Fishing Co., 520 U.S. at 877 (noting that the case considers only *"extra equipment . . . added* by the initial user after the first sale and then resold as part of the [product itself] when [it] is later resold to a subsequent user").  The leading case on the application of the economic loss doctrine to replacement parts installed in a product is Sea-Land Service, Inc. v. General Elec. Co., 134 F.3d 149 (3rd Cir. 1998), also decided under admiralty law.  To determine whether replacement parts installed in a product constitute other property, the Third

---

[3] Paragraph 10 of the Amended Complaint, which summarizes Americoach's monetary claims, states, in relevant part:

> [Americoach] sues the Defendants for the property damage of a destroyed tour bus in the amount of $386,180.00, plus lost profits of $163, 238.00, prejudgment interest and other consequential damages associated with the loss.

[4] However, Americoach's Response to Defendant's Motion to Dismiss does claim that Americoach replaced:

> much of the equipment within the original tour bus, including the following: applicator valve, fuse to the transmission selector, both tag oil seals, radiator fan drive "U" joint, transmission connections, instruments within panel lights, PA mike, tires, park brake knob, low-beam headlights, ball joints, wheel seals, rotors, seat[] belts, steering wheel covers, alternator, regulator board, hub plug, hub caps, a/c expansion valve, a/c dryer, compressor, a/c high pressure hose, power steering, strainer, tag tire, and alternator.

(Pl.'s Resp. at 5.)

9

Circuit applied the "object of the bargain" test, and looked to the object purchased or bargained for

by the Plaintiff.[5]  Id. at 153;  see also Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925,

928 (5th Cir. 1987). The court reasoned that

> [t]he law is clear that if a commercial party purchases all of the components at one
> time, regardless of who assembles them, they are integrated into one product.  Since
> all commercial parties are aware that replacement parts will be necessary, the
> integrated product should encompass those replacement parts when they are installed
> in the [product].

Sea-Land, 134 F.3d at 154 (internal quotations omitted); see also Agrotors, Inc. v. Bell Helicopter

Textron, Inc., 2004 WL 2039954 (E.D.Pa. Sept.9, 2004) (holding that any replacement part becomes

part of the pre-existing "product");  Exxon Shipping Co. v. Pacific Resources, Inc., 835 F.Supp.

1195, 1201 (D. Hawaii 1993) ("An integrated product may have any number of components replaced

with spare parts in the ordinary course of events.  To hold that these parts are "other property" would

lead to absurd results").  Thus, replacement parts, "purchased to be installed and integrated with the

[product]" are components of that product; "they have no use to [the Plaintiff] otherwise." Sea-

Land, 134 F.3d at 154.

In the instant case, an initial purchaser[6] bargained with MCI for a fully-functioning tour bus.

A natural part of that bargain was the awareness that the bus contained components that must be

replaced within its lifetime.  Sea-Land, 134 F.3d. at 154.  When Americoach acquired the bus, the

---

[5]In Sea-Land, the Third Circuit noted that the object of the bargain test was consistent with the
holding in Saratoga Fishing because the test maintains the distinction the Supreme Court drew between
components added to a product by a manufacturer before a product's sale to an initial user and those
added by a subsequent user to the manufactured product.  Compare Sea-Land, 134 F.3d at 153, with
Saratoga Fishing, 520 U.S. at 1788.

[6]The initial purchaser of the bus at issue from MCI was identified in Defendant's Motion to
Dismiss as El Expreso Bus Co. of Houston, TX. (Def.'s Mot. at 3.)

10

product it bargained for was the same: a fully functioning tour bus, but with the knowledge that certain parts would have to be replaced over time. Id. Because the replacement parts are component parts to the bus, even when procured in separate transactions, they form part of the integrated whole. Persuaded by the Third Circuit's decision in Sea-Land, the Court holds that any equipment Americoach purchased to replace equipment on the bus became integrated into the "product itself" when the equipment was installed.

### II. Americoach's Claims for Breach of Implied Warranty of Merchantability and Breach of Implied Warranty of Fitness for a Particular Purpose

MCI contends that Americoach's claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose must be dismissed because MCI was not in privity with the Plaintiff. (Def.'s Mem. in Supp. at 3.) In response, Americoach contends that lack of privity between it and MCI does not prevent recovery on its breach of implied warranty claims because the bus was "unreasonably dangerous." (Pl.'s Resp. at 5.)

> The economic loss doctrine provides that 'in a contract for the sale of goods where the only damages alleged come under the heading of economic losses, the rights and obligations of the buyer and seller are governed exclusively by contract.' Consequently, a plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those losses.

Messer Griesheim Industries, Inc., 131 S.W.3d at 463 (Tenn. Ct. App. 2003) (citing Trinity Industries v. McKinnon Bridge Co., 77 S.W.3d 159 (Tenn. Ct. App. 2001)). Accordingly, "Tennessee law does not allow recovery of economic losses under a breach of warranty theory absent privity . . ." Id. at 473.

The Complaint does not allege privity between Americoach and MCI. Indeed, MCI claims, and Americoach does not dispute, that MCI originally sold the bus in question to "El Expreso Bus

11

Co." of Houston, TX. (Def.'s Mem. in Supp. at 3.) Americoach does not contend that MCI sold the bus to Americoach or that El Expreso Bus Co. and Americoach are related entities. Thus, Americoach and MCI were not in privity and absent some exception, Plaintiff could not recover on its breach of implied warranty claims.

However, Americoach argues that a breach of implied warranty claim for economic loss does not require privity between the parties when the product that is the basis of the law suit is unreasonably dangerous.[7] (Pl.'s Resp at 5.) In support of its position, Americoach asserts that "in Tennessee, privity of contract between the parties is essential to establish a claim for implied warranty **unless** the product is 'in a defective condition unreasonably dangerous to the user or to his property.' Leach v. Wiles, 58 Tenn. App. 286, 204 (1968)." (Pl.'s Resp. at 5.)

The Plaintiff's quotation from Leach v. Wiles, 429 S.W.2d 823 (Tenn. App. 1968) is incomplete. The quoted sentence from Leach in its entirety is as follows:

> As we understand it, our Supreme Court has gone no further than to hold that in the absence of contractual privity, liability can be imposed upon the manufacturer for breach of implied warranty when 'one sells any product in a defective condition unreasonably dangerous to the user or to his property' as provided in 2 RESTATEMENT (Second) Torts, sec. 402A (1965).

Leach, 429 S.W.2d at 832. Section 402A of the Second Restatement of Torts states that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property . . ." Restatement (Second) of Torts § 402A (1965). Reading Leach and the Second Restatement of Torts together, it is clear that the sentence Americoach cites from Leach does not

---

[7] For the purpose of analyzing Americoach's argument, the court has assumed that a bus which spontaneously combusts is an unreasonably dangerous product.

stand for the rule that privity is not required to bring a claim for breach of implied warranty if the product is unreasonably dangerous. Rather, the quoted sentence in Leach states that privity is not required to bring an action for breach of implied warranty when an unreasonably dangerous product has caused property damage or personal injury.[8]

In support of this interpretation, this Court notes that, in reaching its conclusion, the Leach court relied upon the reasoning of Olney v. Beaman Bottling Co., 220 Tenn. 459, 418 S.W.2d 430 (Tenn. 1967), a decision by the Tennessee Supreme Court. In Olney, the Plaintiff sued for physical injuries she suffered after drinking a soft drink which contained large amounts of partially decayed material on a theory of breach of implied warranty of fitness. Id. At issue before the court was whether Olney, a consumer, could recover from the manufacturer in the absence of privity. In affirming the trial court's decision to sustain a demurrer, the Tennessee Supreme Court noted:

> We recognize that strict liability exists upon the manufacturer of a product without fault on his part, under the circumstances outlined in Restatement, Second, Torts § 402A (1965). . . This is a development in the law of torts which seems justified *where the conditions specified in the Restatement are established by proof.* This liability, however, is not liability for breach of warranty as that term has been known and used generally. See Comment M to Restatement, Second, Torts, § 402A (1965). This Court held in Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200 (1942), and in earlier cases, that there is no implied warranty where there is no privity of contract . . . To the extent of this holding, Sullivan and its predecessor are still good law and have not been disturbed by subsequent cases in this jurisdiction.

Id. at 431 (emphasis added). Because the plaintiff's declaration failed to allege that the product was

---

[8] The requirement of personal injury or property damage was codified by the Tennessee legislature in 1972, four years after Leach was decided, in what is now Tenn. Code Ann. § 29-34-104, which states:

> In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain such action.

13

in a defective and unreasonably dangerous condition at the time it left the hands of the manufacturer, the court concluded that the plaintiff had failed to state a cause of action under the Restatement. Only after reaching this conclusion did the court consider whether privity existed between the plaintiff and defendant manufacturer. On the basis of this mode of analysis, the Leach court concluded that "we must necessarily reach the conclusion that the rule requiring privity of contract between the parties as an essential element of implied warranty still exists in Tennessee, except in cases where the product involved is 'in a defective condition unreasonably dangerous to the user or to his property." Leach, at 303. However, in Olney, the additional requirement of the Restatement's application, namely, that the defective product caused "physical harm . . . to the ultimate user" was established. Restatement Second Torts § 402A. Thus, had the plaintiff's declaration alleged, in addition to her physical injuries, that the product was in a defective and unreasonably dangerous condition at the time it left the hands of the manufacturer, the conditions specified in the Restatement would have been established by proof, and privity would not have been required.

In contrast, in the instant case, Americoach has not established non-economic damages and thus, the requirement of privity is not excused regardless of whether the product was unreasonably dangerous. See e.g., Ford Motor Co. v. Lodon, 217 Tenn. 400, 421-22, 398 S.W.2d 240, 250 (Tenn. 1966) ("There seems to be no unfairness in holding that a manufacturer who markets a product which is not only defective but unreasonably dangerous should be responsible for any *physical harm which results to person or property*, even though no privity of contract and no negligence can be established.") (emphasis added).

The Court has found no opinion in which a Tennessee court has held that in the absence of privity a plaintiff could bring a claim for breach of an implied warranty to recover only economic

14

damages, nor has the Plaintiff cited to any such authority.[9]  Consequently, under Tennessee law, as Americoach has no claim against MCI under a breach of implied warranty theory, Plaintiff's claims against the Defendant for breach of MCI's implied warranty of merchantability and for breach of MCI's implied warranty of fitness for a particular purpose must be dismissed.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant MCI's motion to dismiss Plaintiff's claims against MCI for negligence, products liability, breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose.  As such, MCI is DISMISSED as a defendant in the instant action.

IT IS SO ORDERED this 21 day of September, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[9] While many courts, like those in Tennessee, bar recovery for economic loss on an implied warranty theory absent privity, "[a] growing number of courts now allow non-privity plaintiffs to recover for direct (and even consequential) economic loss." See White & Summers, Uniform Commercial Code 11-5 (4th ed.) (citing cases from courts which require privity as well as those who have abolished the requirement).



UNITED STATES DISTRICT COURT – WESTERN DISTRICT OF TENNESSEE

# Notice of Distribution

This notice confirms a copy of the document docketed as number 74 in case 2:04-CV-02016 was distributed by fax, mail, or direct printing on September 23, 2005 to the parties listed.

---

Mark E. Enright
ARNSTEIN & LEHR
120 S. Riverside Plaza
12th Floor
Chicago, IL 60606

John Randolph Bibb
BAKER DONELSON BEARMAN & CALDWELL
211 Commerce St.
Ste. 1000
Nashville, TN 37201

Alan B. Easterly
LEITNER WILLIAMS DOOLEY & NAPOLITAN
801 Broad St.
Third Floor
Chattanooga, TN 37402--262

Robert L. Crawford
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Thadford A. Felton
ARNSTEIN & LEHR
120 S. Riverside Plaza
12th Floor
Chicago, IL 60606

Virginia M. Patterson
THE HARDISON LAW FIRM
119 S. Main St.
Ste. 300
Memphis, TN 38103

Emily Turner Landry
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

John Claude Murrow
THE HARDISON LAW FIRM
119 S. Main St.
Ste. 300
Memphis, TN 38103

W. Timothy Hayes
THE HARDISON LAW FIRM
119 S. Main St.
Ste. 300
Memphis, TN 38103

Jeffrey K. Fleishmann
WYATT TARRANT & COMBS, LLP- Memphis
1715 Aaron Brenner Dr.
Ste. 800
Memphis, TN 38120

Chad D. Graddy
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT